**STANDARD OIL CO. v. GREEN, Chairman of Iowa Board of Assessment, et al. (PHILLIPS PETROLEUM CO., Intervener).**

No. 4609.

District Court, S. D. Iowa, Central Division.

July 8, 1940.

Carr, Cox, Evans & Riley, of Des Moines, Iowa, for plaintiff.

Paul J. Parker, of Des Moines, Iowa, for Phillips Petroleum Co., intervener.

Fred D. Everett, Atty. Gen., and John F. Mulroney, Asst. Atty. Gen., for the State of Iowa.

DEWEY, District Judge.

This suit was instituted by the Standard Oil Company against officials of the State of Iowa to determine whether certain filling stations and bulk plants were chain stores within the meaning of the Iowa Chain Store Tax Act, Code 1939, § 6943.126 et seq. Certain constitutional questions having been raised, a three-judge court was assembled and most of the questions raised by the pleadings were determined by a consent decree; but that consent decree, among other things, provided: That the provisions of the decree should be binding upon all parties, except—"that it shall not be binding either upon the intervenor, Phillips Petroleum Company, or the defendants with respect to certain bulk plants owned or leased by the Phillips Petroleum Company in the State of Iowa at which a wholesale driver plan of operation prevailed during the period from July 1, 1935, up to and including the date of this decree, or a portion of said period." And "the said Phillips Petroleum Company and the defendants shall, before May 1, 1940, present to this court evidence * * * relating to the applicability of the Iowa Chain Store Tax Act * * * to such bulk plants, upon which evidence the court shall decide whether or not the said bulk plants at which

there prevailed a wholesale driver plan of operation, as stated above, are bulk plants upon which the said Phillips Petroleum Company is bound by the terms of said Act to pay a chain store tax thereon, said question to be decided independently of the provisions of this decree * * * *"

Subsequent to this decree the three-judge court determined by written order and decree that all constitutional questions having been settled the three-judge court was without further jurisdiction, and that further proceedings should be heard before the district judge for the Southern District of Iowa.

Further proceedings were had in conformity with the above provisions of the decree and the parties did before May 1, 1940, present to this court the above evidence and later hearing was had on the merits. Oral arguments were had in open court and by agreement of the parties permission was granted to the attorneys to file written briefs, the last of which was filed with this court on the 5th day of July, 1940.

It is stipulated that the chain store tax is sought to be imposed upon 73 bulk plants of the intervenor and upon the five-year taxable period from July 1, 1935, to June 30, 1940.

For convenience, intervenor, Phillips Petroleum Company, will be called the plaintiff in this hearing.

Facts

1. The bill of complaint was filed May 28, 1936, and there is diversity of citizenship between the plaintiff and the defendants and the matter in controversy exceeds $3,000.

2. On or before July 1, 1935, and since, the plaintiff was a Delaware corporation authorized to do business in Iowa and engaged in the business of exploration for, discovery, production, refining, transportation and distribution of crude oil, petroleum products and other related products in the midwestern area of the United States, including the State of Iowa. All petroleum products transported into and distributed in the State of Iowa by the plaintiff were shipped from its refineries to bulk plants therein.

3. Since before July 1, 1935, the plaintiff has owned or leased approximately 90 bulk plants in Iowa, at 73 of which during all or a portion of the period from July 1, 1935, to May 29, 1940, a wholesale driver plan of operation was in effect.

4. These bulk plants consisted of three or more large storage tanks for gasoline of at least 12,000 gallons capacity each, a galvanized sheet metal pump house, and a 24 feet by 24 feet warehouse, which were located in cities or towns on various railroads in Iowa, so that the haul from each such plant was no greater than 25 miles. These plants were usually located on the edges of towns five or six blocks from retail business districts and away from the retail shopping centers. Very few of the plants were located near retail stores, or on paved streets, and it was usually necessary to construct cinder roads from the plants to the nearest paved street. There were no large display windows at the warehouses and very few of them were served by sidewalks. Very few were equipped with electric lights, telephones, toilets, offices or heating facilities. No sales displays were maintained at the plants and no hours were maintained for the public to visit the plants, which were closed and locked up except when merchandise was being unloaded from railroad tank cars to the storage tanks or from the storage tanks into truck tanks. The bulk plants were used for warehouse storage facilities.

5. Each bulk plant was in charge of an agent of the company. He was paid a commission on the gasoline delivered from such bulk plants and all of the products, with the exception of accessories, were consigned to the bulk plant agent. The warehouse is maintained for the storage of products of the company other than gasoline, such as oils, greases, etc., and a line of accessories, such as tires, tubes, patches, windshield wipers, etc. Since July 1, 1935, the bulk plant agent has bought the accessories outright from the company and receives his pay for handling them from the difference between the purchase price and from the price for which they are finally sold.

6. No retail sales are made upon bulk plant premises and no retail prices are established by the plaintiff at the bulk plant premises. No merchandise was sold, offered, or kept for sale at retail in or on the bulk plant premises.

7. No retail profits were received by this plaintiff from the sales of any commodities sold in said plants as no such commodities were sold therein.

8. Deliveries from these bulk plants were made to three classes of users: 1st, by truck tank amounts to service station dealers for resale to the general public; 2nd, by truck tank amounts to commercial consumers of gasoline and delivered at intervals under the terms of a written contract between plaintiff and such commercial consumers; and 3rd, by truck tank from which sales were made to farmers.

9. Neither the company nor the resident agent maintains an office at the bulk plant or at any place within the town or city in which it is located. Most of the agents have assistants either paid on commission or on salary. The farmer business is handled by a driver other than the bulk plant agent and he receives his pay also on a commission, as the second driver plan contemplates that the second driver or employee of the bulk plant agent was to purchase the gasoline and accessories from the bulk agent at wholesale prices and sell for retail prices and receive his commission or pay from such sales.

10. That the wholesale driver plan of operation involved a plan whereby the bulk agent instead of selling direct to consumers would sell to his employee or to some second driver who in turn would sell to consumers. While this plan of operation was in effect as to some of the plants during all of the taxable years from 1935 to 1939, there were only a very few plants in which the second driver actually paid cash for the commodities on delivery and the plan, in general, was only a book change in the method of conducting the distribution of gasoline to the ultimate consumer from that which was in force prior to the placing in effect of the second driver plan.

11. That none of the commercial consumer contracts were made from the bulk plant or from any office of the plaintiff company.

### Opinion

The question for decision is whether these bulk plants are chain stores within the meaning of, and should be taxed under, the Iowa Chain Store Tax Act.

The chain store tax act, among other things, provides: "Sec. 4. Tax Imposed. There is hereby imposed upon every person within the State of Iowa engaged in conducting a business by a system of chain stores from any of which stores are sold or otherwise disposed of at retail tangible personal property, such as goods, wares, and merchandise, an annual occupation tax * * *."

It also carries its own glossary. Among them being as follows:

"Sec. 2. d. 'Retail sale' or 'sale at retail' means the sale to a consumer or to any person for any purpose, other than for resale,

of tangible personal property including goods, wares and merchandise."

"Sec. 2. f. 'Store' means any store or stores or any mercantile or other establishment in which tangible goods, wares or merchandise of any kind are sold or kept for sale at retail."

"Sec. 2. g. 'Conducting a business by a system of chain stores' when used in this act shall be construed to mean and include every person, as defined in this act, in the business of owning, operating or maintaining, directly or indirectly, * * two or more stores, *where* goods, wares, * * or merchandise of any kind whatsoever *are sold or offered for sale at retail* and *where the person operating such store or stores receive the retail profit from the commodities sold therein.*"

As determined by the above findings of fact, the second driver plan put in operation by the plaintiff prior to the taking effect of the chain store tax was a matter of form rather than of substance and did not change the general method of making distribution by the plaintiff through these bulk plants from that which existed prior to 1935. But as no sales were made at these plants or from any office or centralized place, and as the act provides for the payment of a chain store tax on retail establishments only, the question for determination is, aside from the second driver plan, not without difficulty.

We understand there is no contention that the deliveries to the service station dealers bring these bulk plants within the definition of a chain store, as what constitutes a retail sale is expressly stated in the act as being— "the sale * * * to any person * * * other than for resale."

Nor can the distribution or deliveries to commercial consumers under contract be considered a retail sale. The evidence does not establish where these commercial contracts and sales were made, but we know that they could not have been made at the bulk plant or at any store or office of the company within the territory of the company, as none existed. The contract called for future deliveries and no sale of gasoline from the bulk plant was contemplated as the contents of the bulk tanks were constantly changing.

The controversy is therefore narrowed as to whether the delivery of gasoline and merchandise from the bulk plant to tank trucks to be taken into the country on routes and sold from the tank truck to farmers at retail brings these plants within the act as being chain stores.

Arguments can be had on both sides of this question. The State claims that they are retail sales from the bulk plants and that they constitute a store where merchandise is kept for sale at retail; that the act should be broadly construed, as the descriptive words are general and should include all stores.

On the other hand there are indications that the legislature did not intend to make the provisions of the act so broad and inclusive.

1st. What constitutes a chain store has a general meaning in the public mind as being a place from which and in which goods, wares and merchandise are displayed and where people attend for the purpose of purchasing goods for cash either at wholesale or at retail.

2nd. These chain store acts are in force in many of the States of the Union and are more or less copied from the chain store tax laws of other states, and most of the acts define a store as being a place where merchandise is sold or kept for sale either at retail or wholesale. The Iowa statute and the legislature evidently omitted the word "wholesale" for some particular purpose or reason and left the description so as to include retail sales only.

3d. It was never the intention of the plaintiff to use these bulk plants for retail sales but as a part of their distribution system to maintain and use them as wholesale plants only.

4th. The retail outlet was the service station.

It is true there has grown up these sales to farmers from tank trucks, but such sales are made to the farmers at the home of the farmers and not at the bulk plants. It is true the company did advertise nationally and locally and sometimes the commission agent in the town or city where the bulk plant was located advised prospective consumers that they might get in touch with him at his home; but there was no attempt made nor did the method of distribution ever contemplate the sale being made from some office or local place. As I understand the evidence, the sales were made on certain routes which a driver would cover and if an unsolicited consumer desired products of this company, he would generally let a local service station operator know about it

or send a postcard or make a telephone call to the home of the commission agent or a driver. Telephone calls were incidental and the sales were practically all made in hauling gasoline about the country in tank trucks, soliciting and making sales direct to the farmers.

5th. The wordings of the act tend to indicate, if not actually show, that the legislature did not have any thought in mind in passing this act of including warehouses or bulk plants such as here in controversy.

Webster's dictionary defines a "store" as, 1st, "any place where goods are kept for sale whether for wholesale or retail;" and 2nd, "a shop." And a "shop" is defined as "a building or an apartment in which goods, wares, drugs, etc., are sold at retail."

The definition of a "retail sale" and "store" in the glossary of the act are rather general and the provisions of Section 2(g) are more limited in their application, but not at variance with, other definitions of the act. The emphasis which I have given to the act by underscoring some of the words very clearly shows that it may have been the intention of the legislature to apply the taxing act to a retail shop or shops as above defined. The question therefore as to whether or not the act is intended to include stores in a broad sense or those more in the nature of the definition above of a "shop" is uncertain and creates an ambiguity.

These bulk plants are mercantile establishments and if the Iowa statute covered every mercantile establishment where merchandise was kept for sale at wholesale or retail, such bulk plants would be chain stores. Fox v. Standard Oil Co., 294 U.S. 87, 95, 55 S.Ct. 333, 79 L.Ed. 780; Midwestern Petroleum Corp. v. State Board of Tax Commissioners, 206 Ind. 688, 187 N.E. 882, 888, 191 N.E. 153. But the Iowa statute does not cover all mercantile establishments, but only, 1st, those *where* merchandise is sold or offered for sale at retail and, 2nd, *where* retail profit is received from such merchandise sold *in* such an establishment.

It seems to me therefore that the most that can be said for the act covering such bulk plants is that there is a question as to whether it was intended to include places such as these bulk stations as chain stores. It is the general rule of law that statutory construction in tax cases is against the taxing body; that tax laws are to be interpreted liberally in favor of taxpayers, and that words defining things to be taxed may not be extended beyond their clear import and doubts must be resolved against the government and in favor of taxpayers. Palmer v. State Board of Assessment & Review, 1939, 226 Iowa 92, 283 N.W. 415; Gould v. Gould, 245 U.S. 151, 38 S.Ct. 53, 62 L.Ed. 211; Sedalia ex rel. and to Use of Ferguson v. Shell Petroleum Corp., 8 Cir., 81 F.2d 193, 106 A.L.R. 1327.

With this uncertainty and this law in favor of the taxpayer, I do not believe that these bulk plants should be subjected to a chain store tax, and therefore make the following

Conclusions of Law

1. That this court has jurisdiction of the subject matter and of the parties to this suit.

2. That the intervenor, Phillips Petroleum Company, has not conducted a business by a system of chain stores as defined by the chain store tax act at its bulk plants here in dispute in the State of Iowa; that the construction, operation and maintenance of such bulk plants involved in this action, and the method and manner of the operation of these bulk plants do not bring this petroleum company within the act as operating a system of chain stores during the period from 1935 to June 30, 1940, inclusive.

3. A permanent injunction should issue as against the defendants from applying the Iowa chain store tax act to the bulk plants of the Phillips Petroleum Company during said period.

The attorney for the intervenor may prepare an appropriate order and decree in conformity herewith. Defendants except.